FOR PUBLICATION

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 2012-36 |
| | ) | |
| DAVIDSON ALFRED and LAMORTHE DELVA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ATTORNEYS:**

**Ronald W. Sharpe, United States Attorney**
**Ishmael Meyers, Jr., AUSA**
United States Attorney's Office
St. Thomas, VI
  *For the United States of America,*

**George H. Hodge, Jr., Esq.**
Law Offices of George Hodge
St. Thomas, VI
  *For the defendant Davidson Alfred*

**Edson A. Bostic, Acting Federal Public Defender**
**Gabriel J. Villegas, AFPD**
Federal Public Defender's Office
St. Thomas, VI
  *For the defendant Lamorthe Delva, Jr.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court are the motions of the defendants, Davidson Alfred and Lamorthe Delva, for judgments of acquittal or, in the alternative, for a new trial.

## I.    FACTUAL AND PROCEDURAL HISTORY

On December 6, 2012, the grand jury returned a three-count indictment (the "Indictment") against Davidson Alfred ("Alfred") and Lamorthe Delva ("Delva"). Count One of the Indictment charged Alfred and Delva with transporting illegal aliens, a violation of Title 8, Section 1324 of the United States Code ("Section 1324"). Count Two of the Indictment charged Alfred with assaulting a federal officer with a deadly weapon, a violation of Title 18, Section 111 of the United States Code ("Section 111"). Count Three charged Delva with possession with the intent to distribute marijuana, a violation of Title 18, Section 841 of the United States Code.

This matter proceeded to trial on March 4, 2013. After the close of its case, the Government dismissed Count Three. The remaining counts were then submitted to the jury. On March 5, 2013, the jury returned a verdict of guilty with respect to both Counts One and Two.

Alfred and Delva now move for judgments of acquittal, pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"), or, in the alternative, for new trials, pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). The United States of America (the "Government") opposes the motions.

## II. DISCUSSION

### A. Rule 29

A defendant "challenging the sufficiency of the evidence bears a heavy burden." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). A judgment of acquittal is appropriate under Rule 29 only if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

An insufficiency finding should be " 'confined to cases where the prosecution's failure is clear.' " *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984)

("Our task is not to decide what we would conclude had we been the finders of fact; instead, we are limited to determining whether the conclusion chosen by the factfinders was permissible.").

Further, the government may sustain its burden entirely through circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988).

**B.** <u>**Rule 33**</u>

When deciding a Rule 33 motion for a new trial, the Court is provided somewhat more discretion than what is afforded under Rule 29. Under Rule 33, the Court may grant a new trial "in the interest of justice." *United States v. Charles*, 949 F. Supp. 365, 368 (D.V.I. 1996). In assessing such "interest", the court may weigh the evidence and credibility of witnesses. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990). If the Court determines that there has been a miscarriage of justice, the court may order a new trial. *Id*. "The burden is on the defendant to show that a new trial ought to be granted. Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Clovis*, Crim. No. 1994-11 (TKM), 1996 WL 165011, at *2 (D.V.I. Feb. 12, 1996) (citing W<small>RIGHT</small> & M<small>ILLER</small>, F<small>EDERAL</small> P<small>RACTICE</small> & P<small>ROCEDURE</small>: C<small>RIMINAL</small> § 551 (2d ed., 1982)).

### III. ANALYSIS

**A.  <u>Rule 29</u>**

   **1.  Transporting Illegal Aliens**

Alfred and Delva challenge their convictions under Count One of the Indictment, charging them with transporting illegal aliens.

To sustain a conviction under Section 1324 for transporting illegal aliens, the Government must prove: "(1) the defendant transported or attempted to transport an alien within the United States, (2) the alien was in the United States illegally, (3) the defendant knew of or recklessly disregarded the fact that the alien was in the United States illegally, and (4) the defendant acted willfully in furtherance of the alien's violation of the law." *United States v. Silveus*, 542 F.3d 993 (3d Cir. 2008) (citing *United States v. Williams*, 132 F.3d 1055, 1059 (5th Cir. 1998); *United States v. Parmelee*, 42 F.3d 387, 391 & n.5 (7th Cir. 1994); *United States v. Barajas-Chavez*, 162 F.3d 1285, 1288 (10th Cir. 1999)).

At trial, the Government offered the testimony of Yvener Elizee ("Elizee"). Elizee testified that he paid an unidentified person $800 to take himself, his wife, Enid Jonas ("Jonas"), and his children from Haiti to St. John, United States Virgin Islands. (Tr. of Trial, Mar. 4, 2013, 58:5-19 [hereinafter "Trial Tr."].) They arrived at St. John in a boat with several

other passengers at some time in the evening. Elizee testified that he and his family did not have passports and that they never showed any identifying documents to anyone. (Trial Tr. 61:3-62:2.) Upon their arrival in St. John, Elizee testified that he, his family, and some of the other passengers waited in the "bushes" until the next morning. (Trial Tr. 64:6-17.)

At around 11:00 a.m. the next day, Elizee and his family emerged from the bushes and waited along the side of the road. They saw two people pass in a pickup truck, and overheard one of them say to the other, "Look at two Haitians [*sic*]. Let's hold them." (Trial Tr. 64:21-23.) The truck stopped. Inside it were Alfred, who was driving, and Delva, who was sitting in the passenger seat. (Trial Tr. 66:18-67:3; 70:6-70:18.) Delva asked Elizee if he and his family were from Haiti. Elizee replied, "Yes, we came in last night." (Trial Tr. 65:12-17; 69:17; 74:25-75:4.) Elizee and his family then got aboard the truck and left the scene. (Trial Tr.65:12-17.) Shortly thereafter, the truck was stopped by law enforcement officers, who took Elizee and his family, as well as Alfred, into custody. Delva, however, managed to escape. (Trial Tr. 66:7-67:3.)

The Government also presented the testimony of Marie Sylvain Joseph ("Joseph"). She testified that she paid $800 to an individual known as "Boss" to travel by boat from Haiti to St. John with her child. (Trial Tr. 75:9-76:15.) Joseph

testified that the boat arrived in St. John early one morning. She and her child got out of the boat and waited, along with Elizee and his family, in the bushes. (Trial Tr. 77:4-19.) The next morning she walked to the road in an effort to find a car because her child was hungry. Eventually a car stopped. (Trial Tr. 78:1-14.) Inside the car were two people, a driver and a passenger. Joseph got into the back of the car along with another family. (Trial Tr. 78:16-79:5.) Shortly thereafter, the car was stopped by law enforcement officers and Joseph and her child were taken into custody. However, the passenger in the vehicle managed to escape. (Trial Tr. 79:8-80:7.)

National Park Service Ranger David Patrick Horner ("Horner") also testified. He stated that on the morning of November 2, 2012, near the region of Haulover Bay on St. John, he spotted a silver truck stopped near the side of the road. The first three letters of its license plate were "JAM." As he drove past the vehicle, he saw two individuals emerge out of the bushes, and walk towards another individual standing near the truck. Horner then alerted Customs and Border Protection ("CBP") Officers about the truck, and followed it until it was stopped by those officers. (Trial Tr. 91:8-95:14.)

The Government also presented the testimony of CBP Officer Glenn Rogers ("Rogers"). He testified that on the morning of November 2, 2012, he, along with CBP Officers Joseph Lopez

("Lopez") and Clarke Pomeroy ("Pomeroy") were driving towards the Estate Zootenval area of St. John, near Haulover Bay. The CBP Officers traveled in two sports utility vehicles marked with "U.S. Customs and Border Patrol" insignia. Rogers drove one of the SUVs, with Pomeroy as a passenger, and Lopez followed in the second car. (Trial Tr. 110:20-112:6.)

Along the way, Rogers received a phone call from Horner regarding the silver truck. Shortly thereafter Rogers saw a silver pickup truck with the license plate "JAM-334" traveling towards him. Approximately seven people were inside of the truck. Rogers maneuvered his vehicle into the lane in which the truck was traveling, and switched on his lights and sirens. (Trial Tr. 112:8-113:4.) When the truck did not stop, he turned on the vehicles' bullhorn and said "Police, Stop." (Trial Tr. 113:7-11.) When the truck still did not stop, Rogers got out of his car and again commanded the truck to stop, this time making gestures with his hands that were intended to cause the driver of the truck to stop. The truck continued to approach Rogers's car, coming to within twelve meters. At this point, Rogers began to fear for his safety and the safety of his fellow officers. Rogers thus drew his service weapon, a pistol, pointed it at the truck, and again ordered it to stop. The truck finally slowed down and came to a stop about five meters from Rogers's car. (Trial Tr. 113:12-114:21.)

Once the truck stopped, a man seated in the passenger seat got out and ran away. Rogers and the other CBP Officers took the remaining passengers and the driver of the truck into custody. Rogers identified the driver as Alfred. (Trial Tr. 114:25-116:20.) Also riding in the truck were two adult women, one adult man, and two children. (Trial Tr. 117:24-118:2.)

CBP Officer Clarke also testified to substantially the same facts as Rogers. He further testified that, upon stopping the truck, he gave chase to the passenger but was unable to apprehend him. He identified the passenger as Delva. (Trial Tr. 131:5-133:2.)

The Government also offered the testimony of Homeland Security Investigations Special Agent Gail Fraser ("Fraser"). Fraser testified that on November 2, 2012, she questioned Alfred after his arrest. She first read Alfred the *Miranda* warnings, after which he acknowledged that he understood them and agreed to talk. Alfred told Fraser that he had arrived in St. John earlier that morning, where he met a "friend" and some other people. (Trial Tr. 158:2-15.) Alfred stated that he picked up his wife's car, then traveled with his friend and other people to the Coral Bay area of St. John in order to pick up something called a "rear end" or "pumpkin." (Trial Tr. 159:11-15.) Fraser further testified that Alfred told her that, on the way back

from Coral Bay, "they saw the people that his friend asked him to pick up, and they picked them up[.]" (Trial Tr. 16–18.)

Alfred also told Fraser that on some prior occasions, he had been paid "a hundred dollars or so, or given . . . gas in his car for picking up people." (Trial Tr. 17–19.)

The Government also presented the testimony of Custom and Immigration Service ("CIS") Officer Lorelie Connor ("Connor"). She testified that she searched CIS records and could find none relating to Elizee, Jonas, or Joseph. (Trial Tr. 171:10–173:23.)

This evidence unequivocally shows that Alfred transported illegal aliens. Moreover, there is evidence that Alfred was aware of, or at least reckless with regard to, the aliens' status in the United States. Alfred confessed that he was driving in that area because a friend of his asked him to pick up certain people. Elizee further testified that Delva specifically asked whether he and his family were Haitian, before they got aboard the truck. This evidence also tends to show that Alfred transported the aliens in willful furtherance of the aliens' violation of the law. Given this evidence, the Court cannot say that it would be impossible for a rational jury to reasonably conclude Alfred transported illegal aliens, in violation of Section 1324. Accordingly, Alfred's motions for a judgment of acquittal must be denied with respect to Count One.

With respect to Delva, the sufficiency question is a closer one. The evidence tends to show that Delva was riding in Alfred's truck when the Haitian immigrants were picked up. Alfred stated that he was driving with a "friend" and that this friend asked that he pick up certain people. As there is no evidence anyone else was ever in Alfred's truck, it is reasonable to infer this "friend" was Delva. Further, upon spotting the Haitian immigrants by the side of the road, Delva got out of the truck, and asked them if they were from Haiti. Elizee replied, "Yes, we came in last night." (Trial Tr. 65:12–17.)

The facts of this case thus bear a striking similarity to those in *United States v. Silveus*, 542 F.3d 993 (3d Cir. 2008). There, the defendant, Rozaline Silveus ("Silveus") was convicted of transporting illegal aliens. On appeal, she challenged the sufficiency of her conviction on the ground that the evidence only proved she was giving a ride to Haitians, and that it did not support a finding that she intended "to deliberately assist an alien in maintaining his or her illegal presence in this country." *Id.* at 1002 (internal citation and quotation marks omitted).

The Third Circuit disagreed. The court noted that the evidence in that case showed that Silveus approached a group of four Haitian nationals who had illegally landed on St. John the

night before. She took money and identification documents from them, and had them get into her car. She then drove them to the ferry terminal in St. John and boarded a car ferry to St. Thomas, where she was ultimately apprehended. The Third Circuit held that this evidence was sufficient to sustain Silveus's conviction. *Id.* at 1002-03.

Here, although Delva did not take money or identification documents from the Haitian immigrants, he did ask them where they were from before they got into the truck. A rational jury could infer that Alfred and Delva were looking to pick up certain people. To that end, before they stopped for the Haitian immigrants, one of the defendants said, ""Look at two Haitians [*sic*]. Let's hold them." (Trial Tr. 64:21-23.) Moreover, Alfred confessed that he had received money for transporting illegal immigrants in the past. This suggests that Alfred and Delva transported the aliens "not as a friendly gesture," *Silveus*, 542 F.3d at 1003, but rather for profit.

The Court thus finds that given this evidence, a rational juror could reasonably conclude that Delva transported illegal aliens in violation of Section 1324. Accordingly, his motion for a judgment of acquittal will be denied.

### 2. Assault of a Federal Officer with a Deadly Weapon

Alfred also challenges his conviction under Count Two of the Indictment, charging him with assaulting a federal officer with a deadly weapon.

To sustain a conviction for assaulting a federal officer under Section 111, the Government must prove that the defendant: "(1) forcibly; (2) assault[ed], resist[ed], oppose[d], impede[d], intimidate[d], or interfere[d] with; (3) a designated federal officer; (4) while engaged in or on account of the performance of official duties. In addition, the defendant must have: (5) the "intent to do the acts" specified . . . ." *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002); *see also* 18 U.S.C. § 111(a); *United States v. Blassengale*, 413 F. App'x 415, 416 (3d Cir. 2011). The statute provides for enhanced penalties if the defendant "(1) use[s] a deadly or dangerous weapon; (2) in the commission of any of the acts described [above]." *Arrington*, 309 F.3d at 44; *see also* 11 U.S.C. § 111(b); *Blassengale*, 413 F. App'x at 416. A car may be a "deadly or dangerous" weapon if it is used "as a deadly weapon and not simply as a mode of transportation" or "purely for flight . . . ." *Arrington*, 309 F.3d at 45.

Here, as recounted above, the testimony of Rogers and Clarke showed that Alfred drove a truck towards CBP officers. Alfred failed to stop immediately despite repeated commands to

do so. Rogers specifically testified that he feared for his safety and felt compelled to draw his service weapon. Moreover, the CBP Officers were driving marked cars and Rogers verbally commanded Alfred to stop by yelling "Police, stop." (Trial Tr. 113:11.)

From this evidence, a rational jury could reasonably conclude that Alfred intentionally used his car in a deadly or dangerous manner to forcibly assault, resist, oppose, impede, intimidate, or interfere with CBP officers while engaged in the performance of their official duties. Accordingly, Alfred's motion for a judgment of acquittal must be denied with respect to Count Two.

B.  **Rule 33**

Delva argues that he is entitled to a mistrial because Alfred's confession implicated him, in violation of the rule set forth in *Bruton v. United States*, 391 U.S. 123 (1968). Alfred also challenges the admissibility of his confession as against him, on the ground that it was unduly prejudicial. Alfred further claims the Court erred by failing to instruct the jury on the affirmative defense of justification.

1.  *Bruton*

"Bruton and its progeny establish that in a joint criminal trial before a jury, a defendant's Sixth Amendment right of confrontation is violated by admitting a confession of a non-

testifying codefendant that implicates the defendant, regardless of any limiting instruction to the jury." *Johnson v. Tennis*, 549 F.3d 296, 298 (3d Cir. 2008) (citing *Bruton*, 391 U.S. 123; *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Cruz v. New York*, 481 U.S. 186, 193-94 (1987)).

However, *Bruton* is ultimately inapplicable to the present case because Alfred chose to testify. *See United States v. DiGilio*, 583 F.2d 972, 982 (3d Cir. 1976) ("Bruton held that a defendant is denied his sixth amendment right of confrontation when the incriminating confession of a co-defendant is introduced, unless the accused is given an opportunity for cross-examination of his co-defendant."); *Hodges v. Rose*, 570 F.2d 643, 646 (6th Cir. 1978) ("Unlike the petitioner in Bruton, Hodges did have an opportunity to cross-examine his codefendant. The confrontation clause as construed in Bruton "is violated only where the out-of-court hearsay statement is that of a declarant who is unavailable at trial for 'full and effective' cross-examination." (quoting *Nelson v. O'Neil*, 402 U.S. 622, 627 (1971)) (citing *California v. Green*, 399 U.S. 149, 158-64 (1970)) Thus, in this case, Delva in fact had an opportunity to cross-examine Alfred regarding his confession, although he declined to make any inquiries. Accordingly, Delva's motion for a new trial based on a *Bruton* violation will be denied.

### 2. Confession

Alfred challenges the admission of his confession, on the ground that it was unduly prejudicial, in violation of Federal Rule of Evidence 403 ("Rule 403"). Rule 403 authorizes the Court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403. "Evidence is unfairly prejudicial only if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (quoting Advisory Committee's Note, Fed. R. Evid. 403). In other words, "[i]t is unfairly prejudicial if it 'appeals to the jury's sympathies, arouses it senses of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Carter*, 617 F.2d at 972 (quoting 1 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 403(03), at 403–15 to 403–17 (1978)).

Alfred's confession was certainly prejudicial, as it suggested that he knowingly entered into a scheme to transport illegal aliens, or at least individuals whose immigration status was questionable, and that he had done as much before, in exchange for money. However, nothing in his statement is *unfairly* prejudicial. The Court cannot conceive of how his

statement could possibly have influenced the jury to render a decision on any basis other than the jury's assessment that Alfred was guilty of the crimes with which he was charged. Indeed, Alfred in his motion does not identify how his statement might have appealed to jurors' sympathies, aroused their sense of horror, provoked their instinct to punish, or otherwise encouraged them to make a decision on an improper basis. Accordingly, Alfred's motion for a new trial will be denied with respect to this issue.

### 3. Justification

Alfred further argues that a new trial with respect to his conviction for assault is warranted because the Court declined to instruct the jury on the defense of justification.

"The test . . . for denying an instruction on a particular defense [is] . . . : whether the evidence presented . . . is legally sufficient to support that defense." *United States v. Taylor*, 686 F.3d 182, 195 (3d Cir. 2012) (citing *United States v. Mike*, 655 F.3d 167, 175 (3d Cir. 2011) (defendant whose evidence does not support a particular affirmative defense is not "entitled to a jury instruction on that defense).

To be entitled to an instruction on the affirmative defense of justification, a defendant must show (1) that he was facing an immediate threat of attack; (2) that he had a reasonable fear that the threat would be carried out if he did not respond with

an attack of his own; (3) that the defendant's actions were directly caused by the need to avoid harm; and (4) the defendant did not recklessly place himself in the situation giving rise to the assault. *See Taylor*, 686 F.3d at 195.

Here, Alfred fails to point to any evidence sufficient to satisfy any of the four requirements of a defense of justification. Instead, he argues that he did not stop his vehicle immediately because he was concerned about the women and children riding in the back, and because his truck has anti-lock brakes which make it more difficult to stop quickly.

Significantly, however, Alfred points to no evidence that might suggest he was facing an immediate threat of attack from the CBP Officers. By their own testimony, the CBP Officers sought only to stop the car, and drew their weapons only after Alfred failed to heed their initial commands to stop. Moreover, the evidence establishes that Alfred recklessly placed himself in the situation giving rise to the assault, by committing the crime of transporting illegal aliens. Accordingly, Alfred's motion for a new trial will be denied with respect to this issue.[1]

---

[1] Alfred also argues that a new trial is warranted because the Court failed to instruct the jury not to give any special weight to the testimony of law enforcement witnesses. However, after the close of evidence, the Court gave the following instruction:

An appropriate order follows.

S_____
**Curtis V. Gómez**
**Chief Judge**

---

> You've heard the testimony of law enforcement officials. The fact that a witness may be employed by the government as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.
>
> At the same time, it is quite legitimate for defense counsel to try to attack the credibility of law enforcement witnesses on the grounds that their testimony may be colored by a personal or professional interest in the outcome of the case.

(Trial Tr. 234:19-235:4.) The Court thus finds this objection to be without merit.